PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang, Esq.
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760

- and -

PACHULSKI STANG ZIEHL & JONES LLP
John A. Morris, Esq.
Ilan D. Scharf, Esq.
780 Third Avenue, 36th Floor
New York, NY  10017-2024
Telephone: 212/561-7700
Facsimile: 212/561-7777

Attorneys for Official Committee of Unsecured Creditors of The Christian Brothers'
Institute and The Christian Brothers of Ireland, Inc.

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| THE CHRISTIAN BROTHERS' INSTITUTE, *et al.*, | Case No. 11-22820 (RDD) |
| Debtors. | (Jointly Administered) |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE CHRISTIAN BROTHERS' INSTITUTE AND THE CHRISTIAN BROTHERS OF IRELAND, INC., | Adv. Pro. No. 13-[_____] (RDD) |
| Plaintiff, | |
| v. | |
| ALL HALLOWS INSTITUTE, | |
| Defendant. | |

## COMPLAINT FOR AVOIDANCE AND RECOVERY OF
## FRAUDULENT TRANSFER TO ALL HALLOWS INSTITUTE

Plaintiff, the Official Committee of Unsecured Creditors ("Plaintiff" or "Committee") of

The Christian Brothers' Institute ("CBI") and The Christian Brothers of Ireland, Inc. ("CBOI")

(collectively, the "Debtors"), the debtors and debtors in possession in the above-captioned cases

pending under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), by and

through its undersigned counsel, as and for its *Complaint for Avoidance and Recovery of*

*Fraudulent Transfer to All Hallows Institute* (the "Complaint") against All Hallows Institute

("Defendant" or "AHI"), alleges upon knowledge with respect to the Committee and upon

information and belief as to all other matters as follows:

### Nature of This Action

1.      On April 13, 1990, by a transfer deed dated March 9, 1990, CBI transferred

certain real property and improvements (the "All Hallows Transfer") associated with a high

school commonly known as All Hallows High School ("AHHS") to AHI, a corporation formed

by and affiliated with CBI.[1]  Just a few months after recordation of the transfer deed, John J.

Duffy, CBI's then general counsel, explained the All Hallows Transfer as follows:

> Within the last few years in order **to make CBI less of a target in
> any suit for damages**, we have been incorporating each school as
> a separate corporate entity with its own Board of Trustees or
> Directors and transferring title to the school from CBI e.g. to All
> Hallows Institute.  This **helps to give some protection from
> liability** and is also useful for fund raising by individual schools.

*See* December 18, 1990 letter from John J. Duffy to Claude R. Thomson, Q.C., attached hereto

as **Exhibit B** (emphasis added).  The "liability" referenced in Mr. Duffy's letter related to

pending and potential sexual abuse claims against CBI, which included: (a) a 1989 sexual abuse

complaint filed against CBI; (b) sexual, physical and emotional abuse claims involving the

Debtors being investigated by a Royal Commission appointed in 1989 by the Newfoundland

---

[1] A copy of the March 9, 1990 transfer deed is attached hereto as **Exhibit A**.

Government; and (c) other claims or potential claims arising out of abuse perpetrated by members or associates of the Debtors, of which the Debtors would have been aware in 1990.

2.      By this Complaint, the Committee, which includes survivors of the sexual abuse perpetrated by members or associates of the Debtors, seeks to avoid and recover the All Hallows Transfer for the benefit of CBI's bankruptcy estate and its creditors.  The Committee seeks to avoid and recover the All Hallows Transfer as an "actual" fraudulent transfer pursuant to sections 544 and 550 of the Bankruptcy Code and sections 276, 278 and 279 of New York's Debtor & Creditor Law, on the grounds that CBI made the All Hallows Transfer with the actual intent to hinder, delay or defraud creditors, including the sexual abuse survivors.

3.      CBI's actual fraudulent intent with respect to the All Hallows Transfer is beyond dispute.  As described by CBI's own general counsel, CBI made the All Hallows Transfer in a deliberate effort to make CBI a less financially attractive defendant to the sexual abuse survivors who were in active litigation or contemplating litigation against CBI at the time of the All Hallows Transfer.  This direct evidence of CBI's actual fraudulent intent is buttressed by additional circumstantial evidence (or "badges of fraud") showing that, among other things, CBI had (and continues to have) a close relationship with AHI, CBI received no consideration in exchange for the All Hallows Transfer, and CBI retained control over AHHS after the All Hallows Transfer.

4.      Therefore, for these and each of the other reasons set forth herein, the Committee is entitled to avoid and recover the All Hallows Transfer for the benefit of CBI's bankruptcy estate and its creditors, including the sexual abuse claimants.  In addition, under New York law, the Committee also is entitled to recover its reasonable attorneys' fees incurred in prosecuting this action against AHI.

## Parties

5.      The Plaintiff is the Official Committee of Unsecured Creditors appointed in CBI's chapter 11 case by the United States Trustee on or about May 19, 2011.  The United States Trustee appointed the Committee to represent CBI's unsecured creditors pursuant to 11 U.S.C. § 1102(a)(1).  The Committee includes survivors of sexual abuse perpetrated by members or associates of CBI.

6.      The Defendant is All Hallows Institute, a corporation organized and existing under the Education Law of New York with a principal place of business located at 111 East 164th Street, Bronx, New York 10452.  AHI was formed by CBI.  Both CBI and AHI are civil entities affiliated with the Congregation of Christian Brothers (the "Congregation"), which has since the 19th century been a papal institute and voluntary association of laymen in communion with the Roman Catholic Church, and which for over a century has operated in the United States and Canada, among other places.  The North American Province is presently the geographical division of the Congregation that covers the United States and Canada, and is affiliated with CBI and AHI.

## Standing

7.      The Committee has standing and is authorized to commence this adversary proceeding on behalf of CBI's bankruptcy estate pursuant to this Court's *Order Granting Motion of the Official Committee of Unsecured Creditors for Authority to Assert, Litigate and Settle Claims on Behalf of Bankruptcy Estate Relating to Fraudulent Conveyance to All Hallows Institute*.

-4-

## Jurisdiction and Venue

8.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue in this

Court is proper under 28 U.S.C. § 1409.

## Basis for Relief Requested

9.      This adversary proceeding is commenced pursuant to Rule 7001 of the Federal

Rules of Bankruptcy Procedure to avoid and recover the All Hallows Transfer pursuant to

sections 544, 550, 551 and 1107 of the Bankruptcy Code and sections 276, 278 and 279 of New

York's Debtor & Creditor Law.  The Committee also seeks its reasonable attorneys' fees

pursuant to section 276-a of New York's Debtor & Creditor Law.

## Facts

**A.      The All Hallows Transfer**

10.      Prior to April 13, 1990, CBI owned the real property and improvements

associated with AHHS, a high school located in Bronx County, New York.  AHHS was

established by the Congregation in 1909.

11.      On April 13, 1990, by a transfer deed dated March 9, 1990, CBI transferred the

real property and improvements (*i.e.*, the All Hallows Transfer) associated with AHHS to AHI.

*See* **Exhibit A**.  CBI received no consideration in exchange for the All Hallows Transfer.  The

transfer deed was notarized by John J. Duffy, CBI's late general counsel.  *Id*.

12.      Just a few months after recordation of the transfer deed, Mr. Duffy made the

following admissions regarding CBI's fraudulent intent with respect to the All Hallows Transfer:

> Within the last few years in order to make CBI less of a target in
> any suit for damages, we have been incorporating each school as a
> separate corporate entity with its own Board of Trustees or
> Directors and transferring title to the school from CBI e.g. to All

Hallows Institute. This helps to give some protection from liability
and is also useful for fund raising by individual schools.

*See* **Exhibit B**.

13.     The "liability" referenced in Mr. Duffy's letter related to sexual abuse claims

against CBI. Prior to the All Hallows Transfer in 1990, CBI had actual knowledge that

individuals had been sexually abused by its members or associates, that some of the sexual abuse

survivors already had commenced litigation against CBI and that CBI had exposure for further

sexual abuse litigation. For example:

a.     CBI was aware that, in 1989, James Hoy filed a complaint against CBI

arising out of sexual abuse occurring at Essex Catholic High School, a high school operated by

CBI, in 1982. *McNally v. Providence Washington Ins. Co.*, 304 N.J. Super. 83 (App. Div. 1997).

b.     CBI was aware that, in 1989, the Newfoundland Government, responding

to allegations of sexual and physical abuse claims at  the Mt. Cashel orphanage, an orphanage

operated by the Congregation and/or CBI, appointed a Royal Commission of Inquiry to

investigate such abuse claims. That Royal Commission heard allegations of such abuse dating

back  as far as 1950. *Rowland v. Vancouver College*, 2001 BCCA 527 (2001).

c.     The archives of the Eastern American Province include a document

reflecting that the Congregation and CBI were aware of sexual abuse claims arising out of

Canada in 1989. *See* **Exhibit C** (stating that in 1989, the "[f]irst accusations of abuse at Mt.

Cashel Orphanage surface in newspaper in St. John's, Nf'ld. Canadian Province begins years of

court cases …"). The Eastern American Province was one of the predecessors of the North

American Province.

14.     Thus, the All Hallows Transfer was not made by CBI in the usual course of

business. Instead, CBI made the All Hallows Transfer in a deliberate attempt to hinder, delay or

-6-

defraud its creditors and avoid legal liability for the sexual abuse perpetrated by its members or associates.

15.     CBI has claimed, however, that the All Hallows Transfer was in fact made in the usual course of CBI's business.  According to CBI, the All Hallows Transfer was made in the usual course of CBI's business because CBI "conveyed many parcels of developed and undeveloped real property to schools that it had originally established, once they were viable and capable self-sustained independence."  *See Objection to the Motion of the Official Committee of Unsecured Creditors for Authority to Assert, Litigate and Settle Claims on Behalf of Bankruptcy Estate Relating to Fraudulent Conveyance to All Hallows Institute* [Docket No. 335] at ¶ 8. CBI's claim that the All Hallows Transfer was made in the usual course of business is false because, among other reasons, (a) CBI has conveyed, at most, only two other properties to its "stand-alone" schools, and made no such conveyances between 1964 and the time of the All Hallows Transfer, and (b) AHI was not "viable" or "capable of self-sustained independence" at the time of the All Hallows Transfer, but instead continued to receive financial support from CBI through at least 2005.

16.     AHI received the All Hallows Transfer with knowledge of CBI's actual intent to hinder, delay or defraud CBI's creditors, and received the All Hallows Transfer with the actual intent to hinder, delay or defraud CBI's creditors.

17.     CBI did not give actual notice of the All Hallows Transfer to any creditor, nor did anything occur in the operation of CBI, AHI or AHHS that would give rise to constructive notice that the All Hallows Transfer had occurred or was fraudulent.

18.     At all relevant times, a close relationship has existed between the North American Province, CBI and AHI.  Moreover, after the All Hallows Transfer, the North American Province

DOCS_LA:253567.6  14012-002

and CBI retained control over the governance of AHHS and the fundamental aspects of AHHS's operation. The close relationship between the North American Province, CBI and AHI and the North American Province 's and CBI's retention of control over AHHS are evidenced by, among other things, the following facts:

a.      CBI and AHI are both civil entities that are affiliated with the Congregation. CBI and AHI are affiliated with the North American Province, and were affiliated with the Eastern American Province at the time of the All Hallows Transfer.

b.      CBI formed AHI, and transferred the real property and improvements associated with AHHS to AHI in 1990 in a deliberate attempt to hinder, delay or defraud CBI's creditors.

c.      The board of trustees of AHI is, and at all relevant times has been, the highest level of governance of AHI and AHHS. At the time of the All Hallows Transfer, five members of CBI's six-member board of directors were on AHI's six-member board of trustees, and those same five individuals also held a position of governance with the Eastern American Province.

d.      CBI and AHI were represented by the same attorneys – John J. Duffy and Anthony Dougherty – in connection with the All Hallows Transfer.

e.      There was a complete overlap of CBI's board of directors with AHI's board of trustees from April 1990 to the middle of 2005. After the All Hallows Transfer, the highest level of governance of AHI and AHHS (*i.e.*, the board of trustees) did not change until the middle of 2005.

f.      Lawrence T. Murphy, the chief school administrator of AHHS from approximately 1988 to 1997, was a Christian Brother.

g.     Between 2006 and the present, two to three members of CBI's board of directors have been on AHI's board of trustees, which since 2006 has been a three-member board.  At this time, two members of CBI's board of directors are members of the board of trustees of AHI, and also have positions of governance with the Northern American Province. The third member of AHI's current board of trustees is a Christian Brother.

h.     The AHHS website indicates that AHHS's mission and beliefs are closely tied to those of the Congregation, *i.e.*, CBI's ecclesiastical counterpart.

**B.     The Bankruptcy Case**

19.     CBI is, and at all relevant times was, a corporation existing under the laws of New York with a principal place of business located  in New Rochelle, New York.  On April 28, 2011 (the "Petition Date"), CBI filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  CBI continues to operate its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in CBI's chapter 11 case.

20.     Pursuant to 11 U.S.C. §§ 544(a) and 1107, CBI has, as of the Petition Date, all the rights and powers of a "hypothetical judgment creditor" and may avoid any transfer of its property that is voidable by such a "hypothetical judgment creditor" without regard to CBI's knowledge or the knowledge of any actual creditor as of the Petition Date.

21.     In addition, under 11 U.S.C. § 544(b)(1) and 1107, CBI may avoid any transfer of an interest of CBI in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code.

22.     CBI has at least one unsecured creditor (a) who did not discover, and could not with reasonable diligence have discovered, the fraudulent nature of the All Hallows Transfer

within two years of the Petition Date, (b) by whom the All Hallows Transfer is voidable under New York's Debtor & Creditor Law and (c) who holds an unsecured claim against CBI that is allowable under 11 U.S.C. § 502.

### First Claim for Relief
### Avoidance and Recovery of Fraudulent Transfer
### (11 U.S.C. §§ 544(a), 550-551 and N.Y. Debt. & Cred. Law §§ 276, 276-a, 278-279)

23.     The Committee repeats and realleges the allegations contained in each preceding paragraph of this Complaint as though set forth fully herein.

24.     On April 13, 1990, by a transfer deed dated March 9, 1990, CBI made the All Hallows Transfer to AHI, by which CBI transferred the real property and improvements associated with AHHS to AHI.  The All Hallows Transfer was a transfer of CBI's property to AHI.

25.     CBI made the All Hallows Transfer to AHI with the actual intent to hinder, delay or defraud CBI's creditors.

26.     AHI is the initial transferee of the All Hallows Transfer.  AHI did not provide fair consideration or reasonably equivalent value to CBI in exchange for the All Hallows Transfer.  AHI received the All Hallows Transfer with knowledge of CBI's actual intent to hinder, delay or defraud CBI's creditors, and received the All Hallows Transfer with the actual intent to hinder, delay or defraud CBI's creditors.

27.     As of the commencement of CBI's chapter 11 case, CBI and, derivatively, the Committee has all the rights and powers of a "hypothetical judgment creditor" and may avoid any transfer of CBI's property that is voidable by such a "hypothetical judgment creditor" without regard to CBI's knowledge or the knowledge of any actual creditor of CBI as of the commencement of CBI's chapter 11 case.

-10-

28.     At the time of the All Hallows Transfer, the All Hallows Transfer was fraudulent as to, and voidable by, present and future creditors of CBI pursuant to sections 276, 278 and 279 of New York's Debtor & Creditor Law.  Thus, the All Hallows Transfer is voidable by a "hypothetical judgment creditor" of CBI.

29.     The Committee is entitled to an order and judgment against AHI pursuant to 11 U.S.C. § 544(a) and N.Y. Debt. & Cred. Law §§ 276, 278 and 279 that the All Hallows Transfer shall be avoided.  As AHI is the initial transferee of the All Hallows Transfer, the Committee is entitled to recover for CBI's estate the All Hallows Transfer or the value thereof under 11 U.S.C. § 550 and N.Y. Debt. & Cred. Law §§ 278 and 279, plus interest thereon at the maximum legal rate from the date of the All Hallows Transfer, and to preserve the All Hallows Transfer or the value thereof for the benefit of CBI's estate under 11 U.S.C. § 551.  The Committee also is entitled to recover its reasonable attorneys' fees under N.Y. Debt. & Cred. Law § 276-a.

**Second Claim for Relief**
**Avoidance and Recovery of Fraudulent Transfer**
**(11 U.S.C. §§ 544(b)(1), 550-551 and N.Y. Debt. & Cred. Law §§ 276, 276-a, 278-279)**

30.     The Committee repeats and realleges the allegations contained in each preceding paragraph of this Complaint as though set forth fully herein.

31.     On April 13, 1990, by a transfer deed dated March 9, 1990, CBI made the All Hallows Transfer to AHI, by which CBI transferred the real property and improvements associated with AHHS to AHI.  The All Hallows Transfer was a transfer of CBI's property to AHI.

32.     CBI made the All Hallows Transfer to AHI with the actual intent to hinder, delay or defraud CBI's creditors.

33.     AHI is the initial transferee of the All Hallows Transfer.  AHI did not provide fair

consideration or reasonably equivalent value to CBI in exchange for the All Hallows Transfer.

AHI received the All Hallows Transfer with knowledge of CBI's actual intent to hinder, delay or

defraud CBI's creditors, and received the All Hallows Transfer with the actual intent to hinder,

delay or defraud CBI's creditors.

34.     Under 11 U.S.C. § 544(b)(1) and 1107, CBI and, derivatively, the Committee may

avoid any transfer of an interest of CBI in property that is voidable under applicable law by a

creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code.

35.     At the time of the All Hallows Transfer, the All Hallows Transfer was fraudulent

as to, and voidable by, present and future creditors of CBI pursuant to sections 276, 278 and 279

of New York's Debtor & Creditor Law.  CBI has at least one unsecured creditor (a) who did not

discover, and could not with reasonable diligence have discovered, the fraudulent nature of the

All Hallows Transfer within two years of the Petition Date, (b) by whom the All Hallows

Transfer is voidable under New York's Debtor & Creditor Law and (c) who holds an unsecured

claim against CBI that is allowable under 11 U.S.C. § 502.

36.     The Committee is entitled to an order and judgment against AHI pursuant to 11

U.S.C. § 544(b)(1) and N.Y. Debt. & Cred. Law §§ 276, 278 and 279 that the All Hallows

Transfer shall be avoided.  As AHI is the initial transferee of the All Hallows Transfer, the

Committee is entitled to recover for CBI's estate the All Hallows Transfer or the value thereof

under 11 U.S.C. § 550 and N.Y. Debt. & Cred. Law §§ 278 and 279, plus interest thereon at the

maximum legal rate from the date of the All Hallows Transfer, and to preserve the All Hallows

Transfer or the value thereof for the benefit of CBI's estate under 11 U.S.C. § 551.  The

DOCS_LA:253567.6  14012-002

Committee also is entitled to recover its reasonable attorneys' fees under N.Y. Debt. & Cred.

Law § 276-a.

### **Prayer for Relief**

**WHEREFORE**, the Committee prays for judgment against AHI as follows:

(a)     On the First Claim for Relief, for a determination that the All Hallows Transfer is avoided as a fraudulent transfer pursuant to 11 U.S.C. § 544(a) and N.Y. Debt. & Cred. Law §§ 276, 278 and 279, and that the Committee, on behalf of CBI's bankruptcy estate, is entitled to recover the All Hallows Transfer or the value thereof, plus interest thereon at the maximum legal rate from the date of the All Hallows Transfer;

(b)     On the Second Claim for Relief, for a determination that the All Hallows Transfer is avoided as a fraudulent transfer pursuant to 11 U.S.C. § 544(b)(1) and N.Y. Debt. & Cred. Law §§ 276, 278 and 279, and that the Committee, on behalf of CBI's bankruptcy estate, is entitled to recover the All Hallows Transfer or the value thereof, plus interest thereon at the maximum legal rate from the date of the All Hallows Transfer;

(c)     On the First and Second Claims for Relief, preserving for the benefit of CBI's bankruptcy estate the All Hallows Transfer or the value thereof;

(d)     On the First and Second Claims for Relief, for the Committee's reasonable attorneys' fees incurred herein;

(e)     For the Committee's costs of suit incurred herein; and

(f)     For such other and further relief as the Court may deem appropriate.


Dated:  New York, New York           PACHULSKI STANG ZIEHL & JONES LLP
        April 26, 2013

                                     /s/ Ilan D. Scharf
                                     John A. Morris, Esq.
                                     Ilan D. Scharf, Esq.
                                     780 Third Avenue, 36th Floor
                                     New York, NY  10017-2024
                                     Telephone:  (212) 561-7700
                                     Facsimile:   (212) 561-7777

                                     -and-

                                     James I. Stang, Esq. (admitted *pro hac vice*)
                                     10100 Santa Monica Blvd., 13th Floor
                                     Los Angeles, California 90067-4100
                                     Telephone:  (310) 277-6910
                                     Facsimile:   (310) 201-0760

                                     Counsel for the Official Committee of
                                     Unsecured Creditors of The Christian Brothers'
                                     Institute and The Christian Brothers of Ireland, Inc.

DOCS_LA:253567.6  14012-002

## Exhibit A

CONSULT YOUR LAWYER | A SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD | ID BY LAWYERS ONLY

AR8334

**THIS INDENTURE**, made the 9th day of March, nineteen hundred and Fifty

**BETWEEN**   The Christian Brothers' Institute, A New York not-for-

profit corporation, having offices at 21 Pryor Terrace, New Rochelle,

New York,

party of the first part, and All Hallows Institute, a corporation organized and
existing under The Education Law of the State of New York and having
offices at 111 East 164th Street, Borough of the Bronx, County of
Bronx, City and State of New York

party of the second part,

**WITNESSETH**, that the party of the first part, in consideration of

　　　　　　　　　　Ten no/xx ($10.00)　　　　　dollars,

lawful money of the United States, and other good and valuable consideration paid

by the party of the secon → does hereby grant and release unto the party of the second part, the heirs or

successors and assigns of the party of the second part forever,

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate,

lying and being in the Borough of the Bronx, County of Bronx, City and State
of New York, Bounded and Described as follows:

　　　　BEGINNING at the corner formed by the intersection of the
Northerly side of East 164th Street with the Easterly side of Walton
Avenue; running thence EASTERLY along the Northerly side of East 164th
Street, One Hundred Fifty-one and Fifty-one one-hundredths (151.51)
feet to a point, which point is distant One Hundred Three and Sixty-
three one-hundredths (103.63) feet Westerly from the corner formed by
the intersection of the Northerly Side of 164th Street with the
Westerly Side of Grand Boulevard and Concourse; running thence
NORTHERLY along a line forming an angle of ninety-seven (97) degrees,
seven (7) minutes, ten (10) seconds on its Westerly side with the
Northerly side of East 164th Street, Forty and Sixty-four one-hun-
dredths (40.64) feet to a point; thence NORTHERLY on a line forming
on its Westerly side an angle of One Hundred seventy (170) degrees,
forty-eight (48) minutes, forty(40) seconds with the last mentioned
course, Ninety-six and Eighty-five one-hundredths (96.85) feet to
a point; thence NORTHERLY on a line forming on its Westerly side an
angle of one hundred seventy-six (176) degrees, six (6) minutes, no
(00) seconds with the last mentioned course, Seventy-three and
Ninety-six one hundredths (73.96) feet to a point; thence NORTHLY
on a line which forms on its westerly side an angle of one hundred
seventy-five (175) degrees, ten (10) minutes, twenty (20) seconds
with the last course, Forty and Sixty one hundredths (40.60) feet,
more or less to a point where said line intersects the dividing
line between lots 388 and 389 as shown on the map of West Morrisania
etc. made by A. Findlay dated June 1, 1852 and filed in the office
of the Register of Westchester County May 16, 1853 as Map No. 15 if
said dividing line were extended easterly at right angles to the
westerly side of Old Butternut Street; thence WESTERLY at right
angles to the westerly side of Old Butternut Street, Twenty and
Sixty-four one-hundredths (20.64) feet to the Westerly side of Old
Butternut Street at its intersection with the dividing line between
lots 388 and 389 aforesaid; thence running WESTERLY at right angles
to Walton Avenue and along the said dividing line between Lots 388
and 389 on said map of West Morrisania, One Hundred Seventeen and
Fifty one-hundredths (117.50) feet to the Easterly side of Walton
Avenue and thence SOUTHERLY along the Easterly side of Walton Avenue,
Two Hundred Forty-six and Fifty-nine one-hundredths (246.59) feet to
the corner aforesaid the point or place of BEGINNING.

TOGETHER with all right, title and interest of the party of the first part of, in and to any streets and roads abutting the above described premises to the center lines thereof,

TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises,

TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been incumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

                                        THE CHRISTIAN BROTHERS' INSTITUTE

                                        By William W. Broe
                                        ~~Harold M. Beloney, President~~
                                        Vice-President

On the ____ day of ____ 19__ , before me
personally came

to me known to be the individual described in and who
executed the foregoing instrument, and acknowledged that
executed the same.

STATE OF NEW YORK, COUNTY OF ____

On the ____ day of ____ 19__ , before me
personally came

to me known to be the individual described in and who
executed the foregoing instrument, and acknowledged that
executed the same.

**STATE OF NEW YORK, COUNTY OF** Westchester

On the 9th day of March 1990, before me
personally came HAROLD M. DELANEY William M
Stelda to me known, who, being by me duly sworn, did depose and
say that he resides at No. 21 Pryer Terrace
New Rochelle, New York
that he is the President
of The Christian Brothers' Institute
, the corporation described
in and which executed the foregoing instrument; that he
knows the seal of said corporation; that the seal affixed
to said instrument is such corporate seal; that it was so
affixed by order of the board of directors of said corpora-
tion, and that he signed his name thereto by like order.

JOHN J. DUFFY
Notary Public, State of New York
No. 44-6114002
Qualified in Rockland County
Commission Expires December 31, 19__

**STATE OF NEW YORK, COUNTY OF** ____

On the ____ day of ____ 19__ , before me
personally came

to me known, who, being by me duly sworn, did depose and
say that he resides at No. ____ ;
that he is the ____ ;
of ____
, the corporation described
in and which executed the foregoing instrument; that he
knows the seal of said corporation; that the seal affixed
to said instrument is such corporate seal; that it was so
affixed by order of the board of directors of said corpora-
tion, and that he signed h ____ name thereto by like order.

$ RECEIVED 4455
REAL ESTATE

APR 13 1990
TRANSFER TAX
BRONX
COUNTY

SECTION 9
BLOCK 2471
LOT 1
COUNTY OR TOWN   Bronx

LOC. VER. 90
BY ADDRESS

| | FILED | 419645 |
| | GANFF | $21.00 |
| | | 419646 |
| BXD4 | GANFF | $1.00 |
| PAID | GANFF | 419646 |
| | | $1.00 |

**Bargain and Sale Deed**
WITH COVENANT AGAINST GRANTORS ACTS
TITLE NO.  AR8334

THE CHRISTIAN BROTHERS'
INSTITUTE

TO

ALL HALLOWS INSTITUTE

RECORDED BY
LTIC ABSTRACT CORP.
32 EAST 39th STREET
NEW YORK, N.Y. 10016
899-2170

STANDARD FORM OF NEW YORK BOARD OF TITLE UNDERWRITERS
Distributed by
TITLE GUARANTEE-
NEW YORK
A TICOR COMPANY

Recorded At Request Of The Title Guarantee Company
**RETURN BY MAIL TO:**

SHEA & GOULD
330 Madison Avenue
New York, New York 10017
DAVIDOFF + MALITO
100 42½ St
New York N.Y. 10017   Zip No.

RECORDED IN BRONX COUNTY

1990 APR 13  A # 31

HPR-1

REC. FEE  A 21 Y-1
SST $  0
EPT #  1899

**<u>Exhibit B</u>**

# DAVIDOFF & MALITO

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

ATTORNEYS AT LAW

100 EAST 42ND STREET

NEW YORK, N.Y. 10017-5671

(212) 557-7200

FAX (212) 286-1684

ALBANY
150 STATE STREET
ALBANY, N.Y. 12207
(518) 465-8230
FAX (518) 465-8660

WASHINGTON, D.C.
444 NORTH CAPITOL STREET, N.W.
WASHINGTON, D.C. 20001
(202) 347-1117
FAX (202) 638-6784

LONG ISLAND
91 N. FRANKLIN STREET
HEMPSTEAD, N.Y. 11550
(516) 481-3690

FLORIDA
1 SOUTHEAST THIRD AVENUE
SUITE 1450
MIAMI, FLA. 33131
(305) 530-1022
FAX (305) 530-9417

December 18, 1990

**VIA TELEFAX**

Claude R. Thomson, Q.C.
Fasken Campbell Godfrey
  Barristers and Solicitors
Box 20
Toronto-Dominion Centre
Toronto, Canada
M5K 1N6

Re:   The Christian Brothers of
      Ireland in Canada

Dear Mr. Thomson:

This will acknowledge your telecopy letter of December 12th regarding the 1962 incorporation by Special Act of The Christian Brothers of Ireland in Canada.

The only person in New York who had any personnel albeit distant involvement with this matter was the late Myles B. Amend. And while I do have the Brothers many files, I have been unable to locate any folder on the above entity.

It is possible that Brother Paul Hennessy, Provincial of the Eastern American Province located at 21 Pryer Terrace, New Rochelle, New York 10804-4499 has a file on this matter. Brother Darcy to whom Myles addressed his letter was during those years, one of the Provincial Consultors before becoming the first Provincial in the then new Canadian Province.

I will attempt to respond to your inquiries in the order presented based upon my knowledge of what the Brothers have done in the Eastern American Province for years.

1.   Yes.  But the power to operate the company resides in the Board of Trustees.

DAVIDOFF & MALITO

Claude R. Thomson, Q.C.
December 18. 1990
Page 2

2.  Yes, it was intended that all of the assets and
activities of the congregation would be carried on through the
limited company.  Were all assets intended to be transferred to
the company (Yes) and was the congregation as such intended to
cease to exist? (No)

The relationship between the congregation and the
company was that the congregation ran the company and elected its
officers and Trustees.

The company (corporation) in the Eastern American
Province is known as "The Christian Brothers' Institute"
("CBI").  It is a New York not-for-profit corporation and derives
its powers both from the statute which provides broad powers to
own real and personal property, etc. and also from it's Charter
(two pages of powers are enclosed herewith).

3.  Yes.

In response to your comments on the corporate
structure you are correct that the company (CBI) was and is
intended as a corporate vehicle to own and hold title to real and
personal property, to borrow money, mortgage property et al.

Within the last few years in order to make CBI less of
a target in any suit for damages, we have been incorporating each
school as a separate corporate entity with its own Board of
Trustees or Directors and transferring title to the school from
CBI e.g. to All Hallows Institute.  This helps to give some
protection from liability and is also useful for fund raising by
individual schools.

If I can be of any further assistance, please call me
and I will be happy to oblige.

Best wishes for the Christmas season and a healthy,
happy new year.

Cordially,

John J. Duffy

JJD:IMG
Enclosures

cc:  Bro. Paul K. Hennessy, C.F.C.

# **Exhibit C**



# DEVELOPMENT OF THE CONGREGATION OF CHRISTIAN BROTHERS IN NORTH AND SOUTH AMERICA (1876-PRESENT)

A BRIEF DESCRIPTION IN CHRONOLOGICAL ORDER
OF EVENTS IN THE LIFE OF THE CONGREGATION
IN THE WESTERN HEMISPHERE.

ARCHIVES/RECORDS CENTER
EASTERN AMERICAN PROVINCE
NEW ROCHELLE, NEW YORK
1997

WF49085

34

1989   St. Augustine's Volunteer Community, 1184 Fulton
       Ave., Bronx, NY established
       Gerald J. Iacullo, superior/director
       2 Brothers and 3 volunteers
       (1992-1994 moved to C.B.-East-Harlem Community, Br.
       Robert B. McGovern, director
       (1994 PROGRAM SUSPENDED)

1989   Provincial Chapter (EAP) meets at Mt. St. Alphonsus,
       Esopus, NY June 25 - July 8th
       all Brothers of Province besides elected delegates are
       invited to participate
       (13 elected delegates)

1989   Province Steering Committee holds first meeting at St.
       Joseph's Residence, New Rochelle, NY, (Sept) Members are
       the elected delegates from July Chapter, term expires
       Sept. 1990.  In 1996 Edmundian and Associate members
       are appointed to Steering Committee.

1989   Los Asociados(as) A Edmundo Rice established in
       Monsefu, Peru (Comunidad "Edmundo Rice")
       Jorge Mirua was founding Asociado
       Vincent A. Peragine, coordinator
       10 Asociados(as); 4 candidates
       (1994  Asociados(as) established at Santa Rosa, Lima)
       (1995  Asociados(as) established at Ariquipa)
       (1996  Asociados(as) established in Chimbote)

1989   Province Archives/Records Center opened at St.
       Joseph's Residence, New Rochelle, NY
       Dedicated in memory of Rt. Rev. Msgr. James W. Power
       on Nov. 30, 1991 by Rev. Br. J. Columba Keating,
       Superior General
       A. Eugenio De Lorenzo, director

1989   Iona College opens campus in Manhattan, NY,
       425 West 33rd Street

*1989  First accusations of abuse at Mt. Cashel Orphanage
       surface in newspaper in St. John's, Nf'ld.  Canadian
       Province begins years of court cases and in October
       of 1996 declares bankruptcy.  In November of 1996
       accusations against members of EAP who had worked
       in Mt. Cashel over 30 years ago surfaced.